UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RONALD GLENN DAUGHERTY,

    Petitioner,

v.

KENNETH QUINN,

    Respondent.

Case No. C06-5051 FDB/KLS

REPORT AND RECOMMENDATION

**NOTED FOR:**
**August 18, 2006**

This 28 U.S.C. § 2254 petition for habeas corpus relief has been referred to Magistrate Judge Karen L. Strombom pursuant to 28 U.S.C. § 636 (b) and Local MJR 3 and 4. Petitioner seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254. (Dkt. # 1). Respondent has answered. (Dkt. # 11). This matter is now ripe for review.

## I. INTRODUCTION

Petitioner is in the custody of the Department of Corrections (DOC) pursuant to a 1996 conviction of two counts of first degree child molestation, committed from October 1992 through February 1994. (Dkt. # 12, Exh. 1). On December 19, 1996, Petitioner was sentenced to an exceptional sentence of 178 months confinement. Petitioner's possible early release date is May 27,

REPORT AND RECOMMENDATION- 1

2009. (Id. at Exh. 2). Petitioner challenges his convictions, claiming that the trial court violated his right to a public trial when it excluded subpoenaed witnesses from the courtroom.

## II.  STATEMENT OF THE CASE

**A.      Factual Background**

The Washington Court of Appeals summarized the facts of Petitioner's case as follows:

> The victim in this case, Daugherty's daughter, A.D., was born in October 1984, shortly before Daugherty left the family to serve in the military in Korea. Daugherty and his wife divorced while he was gone and he did not see his children for almost five years.
>
> Daugherty remarried and took custody of the children. There apparently were some family difficulties that caused Daugherty to send the children to live with their paternal grandparents for about a year. While there, A.D. told her grandmother that her uncle had improperly touched her vaginal area. The grandmother thought A.D. was lying and spanked her.
>
> When the children returned to live with Daugherty, he was single again and had begun dating Laura, A.D.'s stepmother at the time of trial. Daugherty and Laura married in July 1993.
>
> In late January or early February 1994, Laura noticed that A.D. seemed upset and questioned her. Eventually, A.D. told Laura that Daugherty had touched her vaginal area. Daugherty denied the allegations. The next day Laura contacted the family pastor, Arthur Hunt. During Hunt's subsequent two meetings with A.D., she repeated her allegations in more detail.
>
> A.D. told Hunt that Daugherty had told her that she had played with his private parts when she was a baby. She also said that Daugherty had her sleep in his bed during the time they lived in an apartment so she could wake him when the alarm went off. A.D. said that Daugherty would then "play with me when I was in bed. He touched my private parts, and I asked him to stop, and [Daugherty] told me not to talk about it. He'd get in trouble, and I might get in trouble too." IV Report of Proceedings (RP) at 558. A.D. said that Daugherty had touched her a couple of times after he married Laura. She also told Hunt about the touching incident involving her uncle.
>
> Hunt told the family they needed to call child protective services or he would. Daugherty made the call and A.D. then repeated her allegations to Joyce Epstein-Ross, a nurse practitioner who examined her; to Julie Case, a child interviewer from the prosecutor's office; and to Dolores Streeter Beckner, a counselor who conducted meetings with the entire family.
>
> The State charged Daugherty in November 1995 with two counts of first degree child molestation. The trial court found that A.D. was competent to testify and that her statements to the above listed individuals were admissible under the child hearsay statute, RCW 9A.44.120.

REPORT AND RECOMMENDATION- 2

> During trial, A.D. lived in the family home with her father, who continued to deny the allegations, and with Laura, who indicated that she did not believe A.D.'s story. In October 1996, the jury found Daugherty guilty as charged and the trial court imposed an exceptional sentence of 178 months.
>
> More than 16 months later, while Daugherty's appeal was pending, A.D. wrote her father a letter in which she recanted her trial testimony, asserting that her allegations were false. In May 1998, this court granted Daugherty's motion to remand his case to the trial court for a hearing on his motion for a new trial.
>
> A.D. testified at the remand but the trial court found her testimony not credible and denied the new trial motion. We now consider Daugherty's appeal from that ruling, which we consolidated with his appeal from his convictions.

(Dkt. # 12, Exh. 3, pp. 1-3).

**B.**     **Procedural History**

Petitioner appealed to the Washington Court of Appeals. (Id. at Exh. 4). The court denied his appeal in an unpublished opinion. (Id. at Exh. 3). Petitioner then petitioned for review to the Washington State Supreme Court. (Id. at Exh. 7). The Washington State Supreme Court denied review without comment on October 29, 2002, and the Washington Court of Appeals issued its mandate. (Id. at Exh. 8, 9).

Petitioner filed a personal restraint petition. (Id. at Exh. 10, 11). The Washington Court of Appeals denied the petition. (Id. at Exh. 15). Petitioner moved for discretionary review in the Washington Supreme Court, which was denied. (Id. at Exh. 16, 17). Petitioner moved to modify the ruling and the court denied the motion without comment. (Id. at Exh. 18, 19). Petitioner's federal habeas corpus action was filed on January 31, 2006. (Dkt. #1).

**C.**     **Exclusion of Witnesses at Trial**

Prior to the beginning of trial, the prosecutor indicated a desire to exclude certain family members, including Linda Spurgin, petitioner's sister-in-law; Kevin Spurgin, petitioner's brother-in-law, and Marilyn Cudney, a teacher's aid, who worked with petitioner's wife. The prosecutor identified these individuals as potential rebuttal witnesses. (Dkt. # 12, Exh. 23, pp. 279-281). As the State had not served any of the family members with subpoenas, the court did not rule on the issue of their exclusion at that time. (Id. at 282). Before the petitioner's wife was due to testify, the

REPORT AND RECOMMENDATION- 3

state served the witnesses with subpoenas, and the issue was again brought before the court. At that time, the court heard extensive argument between counsel prior to concluding that the family members should be excluded during the wife's testimony:

> THE COURT: All right, maybe I misunderstood you when you were talking earlier. So you're going to ask Mrs. Daugherty what kind of atmosphere is at home, and these people are either going to corroborate that or not corroborate that. So when she gets up on the stand, if for example she were to say everything is warm and fuzzy at home, and these people when you interview them say, no, things are tense at home, then you're going the call them in as witnesses.
>
> MR. NEEB: Or if she said this has been a perfectly comfortable environment for 'the victim' and she hasn't been under any kind of strain.
>
> THE COURT: So those two people. Anybody else's testimony they're going to be able to affect or not affect?
>
> MR. NEEB: Of the other people in my case, no.
>
> THE COURT: For Mrs. Daugherty and Amber Daugherty right now, those folks are going to stay out in the hall. Before Amber testifies we're going to have a little hearing and find out if she feels she's going to be intimidated. If she is, they're going to stay out.

(Id. at p. 357).

Following a weekend recess, the trial court held a hearing where the petitioner's daughter testified and each side was allowed to question her regarding her feelings about the presence of the family members in the courtroom. At the conclusion of her testimony, the government asked that the family members be excluded during the entire testimony in the trial. (Id. at Exh. 24, p. 375). The court declined to go that far. After hearing argument of counsel, the court ordered the family members to sit in the back row of the courtroom:

> Okay. Well, I certainly can exclude them during Mrs. Daugherty's testimony because that's where, if there's anything they're going to say, it's going to conflict with what she has to say.
>
> I think that these are hard cases, very difficult, but the legislature, like [the prosecutor] said, has shown a tendency to want to protect the alleged victim as much as possible from the severe consequences of the courtroom.
>
> So I'm going to at least order that they sit in the back row. That's all.

REPORT AND RECOMMENDATION- 4

> But there is nothing that came out during this hearing that said that what the alleged victim was going to say in this case was going to be contradicted by anything they had to say; only what possibly might be contradicted–they might contradict something that Laura Daugherty has to say, and that's all. And the reason for that is that this young lady hasn't talked to any of these people. She doesn't have anything that can be contradicted by anything they have to say.

(Id. at pp. 378-79).

### III. ISSUES PRESENTED

Petitioner presents the court with the following ground for relief:

> The trial court denied petitioner's right to a public trial when it excluded his family members during parts of his trial.

(Dkt. # 1, pp. 7-9).

### IV. EVIDENTIARY HEARING

In a proceeding instituted by the filing of a federal *habeas corpus* petition by a person in custody pursuant to a judgment of a state court, the "determination of a factual issue" made by that court "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Under 28 U.S.C. § 2254(e)(1), the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

Where a petitioner "has diligently sought to develop the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court," an evidentiary hearing in federal court will not be precluded. Baja v. Ducharme, 187 F.3d 1075, 1078-79 (9th Cir. 1999) (quoting Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir. 1998)). On the other hand, if the petitioner fails to develop "the factual basis of a claim" in the state court proceedings, an evidentiary hearing on that claim shall not be held, unless the petitioner shows: (A) the claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder

REPORT AND RECOMMENDATION- 5

1  would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2).

2      An evidentiary hearing "is required when the petitioner's allegations, if proven, would

3  establish the right to relief." <u>Totten v. Merkle</u>, 137 F.3d 1172, 1176 (9th Cir. 1998). It "is *not*

4  required on issues that can be resolved by reference to the state court record." <u>Id.</u> (emphasis in

5  original). As the Ninth Circuit has stated, "[i]t is axiomatic that when issues can be resolved with

6  reference to the state court record, an evidentiary hearing becomes nothing more than a futile

7  exercise." <u>Id.</u>; <u>United States v. Birtle</u>, 792 F.2d 846, 849 (9th Cir. 1986) (evidentiary hearing not

8  required if motion, files and records of case conclusively show petitioner is entitled to no relief)

9  (quoting 28 U.S.C. § 2255).

10      Here, "[t]here is no indication from the arguments presented" by petitioner "that an

11  evidentiary hearing would in any way shed new light on the" grounds for federal *habeas corpus* relief

12  raised in his petition. <u>Totten</u>, 137 F.2d at 1177. Because, as discussed below, the issues raised by

13  petitioner may be resolved based solely on the state court record and he has failed to prove his

14  allegation of constitutional errors, no evidentiary hearing is required.

15

16                        **V.  LEGAL STANDARDS**

17      **A.     Standard of Review**

18      Federal courts may intervene in the state judicial process only to correct wrongs of a

19  constitutional dimension. <u>Engle v. Isaac</u>, 456 U.S. 107 (1983). 28 U.S.C. § 2254 is explicit in that a

20  federal court may entertain an application for writ of habeas corpus "only on the ground that [the

21  petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28

22  U.S.C. § 2254(a)(1995). The Supreme Court has stated many times that federal habeas corpus relief

23  does not lie for errors of state law. <u>Lewis v. Jeffers</u>, 497 U.S. 764 (1990); <u>Pulley v. Harris</u>, 465 U.S.

24  37, 41 (1984); <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991).

25      Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated

26  on the merits in the state courts unless the adjudication either (1) resulted in a decision that was

27  contrary to, or involved an unreasonable application of, clearly established federal law, as determined

28  REPORT AND RECOMMENDATION- 6

by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  28 U.S.C. §2254(d).  A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. §2254(e)(1).

**B.     Exhaustion of State Remedies**

In order to satisfy the exhaustion requirement, petitioner's claims must have been fairly presented to the state's highest court.  Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985).  The record reflects that petitioner exhausted his claim in the state court within the meaning of 28 U.S.C. § 2254(b).

**C.     Right to Public Trial**

The Sixth Amendment guarantees a defendant "the right to a speedy and public trial."  The public trial right was created for the benefit of defendants.  U.S. v. Sherlock, 962 F.2d 1349, 1356 (9th Cir. 1989) (citing Waller v. Georgia, 467 U.S. 39, 46 (1984); Gannett Co. v. DePasquale, 443 U.S. 368, 380 (1979)).  It discourages perjury and ensures that judges, lawyers and witnesses carry out their respective functions responsibly.  Sherlock, 962 F.2d at 1356 (citing Waller, 467 U.S. at 46; In re Oliver, 333 U.S. 257, 270 & N. 26 (1948)).

The right to a public trial, however, is not absolute and must give way in some cases to other interests essential to the fair administration of justice.  Sherlock, 962 F.2d at 1356 (citing Waller, 467 U.S. at 45).  The Ninth Circuit has upheld a partial closure where family members of the defendants made the minor victim of a sexual offense feel uncomfortable.  *See* Sherlock, 962 F.2d at 1357.  "The protection of young victims of sex crimes from the trauma and embarrassment of public scrutiny justifies closing parts of a criminal proceeding."  Id.

Moreover, the right to a public trial has always been interpreted as being subject to the trial judge's power to keep order in the courtroom.  United States v. Hernandez, 608 F.2d 741, 747 (9th Cir. 1979).  A reviewing court must ascertain whether the trial court had a "substantial" reason for the partial closure of a trial.  Sherlock, 962 F.2d at 1357.  And the court must narrowly tailor the

REPORT AND RECOMMENDATION- 7

closure to fit that reason. Waller, 467 U.S. at 45. The court must articulate the reason "along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." Id.

When a court orders limited closure, the court must satisfy three procedural requirements. Sherlock, 962 F.2d at 1358. First, the court must hold a hearing on the closure motion. The court meets this requirement by giving the defendant the right to be heard. Id. Second, the court must make factual findings to support the closure. Waller, 467 U.S. at 48. Third, the court must consider reasonable alternatives to closing the courtroom. Id.

### D.    Rule 615 - Exclusion of Witnesses

Rule 615 Federal Rules of Evidence provides, [a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order on its own motion . . . ". The rule makes the exclusion of witnesses a matter of right and "the decision is no longer committed to the court's discretion as it once was." U.S. v. Ell, 718 F.2d 291, 292 (9th Cir. 1983) (citing Fed. R. Evid. 615 advisory committee note).

## VI.  DISCUSSION

Petitioner claims that the trial court violated his right to a public trial when it granted the State's motion to exclude members of his family from the courtroom during trial. The Washington Court of Appeals rejected petitioner's claim:

> Daugherty claims that the trial court violated his right to a public trial when it granted the State's motion to exclude five subpoenaed witnesses from the courtroom during Laura's testimony. He contends that these subpoenas were a sham device designed to exclude the friends and family members from the trial.
>
> The sixth amendment to the United States Constitution and article I, section 22 of the Washington Constitution, provide the accused with the right to a public trial. *Cohen v. Everett City Council*, 85 Wn.2d 385, 387, 535 P.2d 801 (1975). We presume prejudice when there is a violation of that right. *State v. Bone-Cub*, 128 Wn.2d 254, 261-62, 906 P.2d 325 (1995); *State v. Collins*, 50 Wn.2d 740, 745, 314 P.2d 660 (1957). The remedy for a violation is reversal and remand for a new trial. *State v. Rivera*, 108 Wn. App. 645, 652, 32 P.3d 292 (2001).

REPORT AND RECOMMENDATION- 8

> Daugherty equates the exclusion of the subpoenaed witnesses during the testimony of one witness with a complete closure of the courtroom. He then argues that when the trial court closed the court without first considering the *Bone-Club* factors, it violated his constitutional right to a public trial. 128 Wn.2d at 258-59.
>
> In *Bone-Club*, the trial court cleared and closed the courtroom during a pretrial suppression hearing at the State's unexplained request. 128 Wn.2d at 256-57. The Washington Supreme Court held that the trial court should have considered five factors and made a record before ordering the complete closure. *Bone-Club*, 128 Wn.2d at 258-59, 261. Because it did not do so, the Supreme Court remanded for a new trial. *Bone-Club*, 128 Wn.2d at 261.
>
> But the trial court here did not completely close the courtroom. It merely ordered the five subpoenaed witnesses, two of whom the defense later called to testify, to remain outside the courtroom during Laura's testimony.
>
> After the State moved for exclusion of the witnesses during Laura's and A.D.'s testimony, the trial court elicited the reasons for the request and then heard testimony from A.D. on the issue. The court then ruled that the potential witnesses could be present during A.D.'s testimony but should step out during Laura's.[1] Based on this record and the limited nature of the trial court's order, we find no abuse of the court's substantial authority to regulate the conduct of a trial. *See, e.g., State v. Johnson*, 77 Wn.2d 423, 428, 462 P.2d 933 (1969); *State v. Malone*, 20 Wn. App. 712, 714, 582 P.2d 883 (1978). Further, we find no authority that would require the trial court to engage in a *Bone-Cluib* analysis before taking this limited action. *See* 128 Wn.2d at 258-59; *see also Waller v. Georgia*, 467 U.S. 39, 45, 48, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (`1984) (under sixth amendment, trial court must consider similar factors before ordering complete closure).
>
> [FN [1]The trial court ordered the witnesses to sit in the back of the courtroom during A.D.'s testimony but they apparently voluntarily left the courtroom when she testified.]

(Dkt. 12, Exh. 3, pp. 3-5).

The Washington Court of Appeals was also concerned about potential abuse of the subpoena power. However, because the trial court was careful to make a record of its basis for the witnesses' exclusion and balanced the petitioner's right to a public trial with the State's interest in preserving the integrity of the potential witnesses, the Court of Appeals was satisfied that petitioner's constitutional rights had been protected. (*See* Id. at 5).

REPORT AND RECOMMENDATION- 9

The Court of Appeals also reviewed petitioner's concern that the State's belabored questioning of his wife as to the presence and identity of certain spectators and its reference to those individuals again during closing argument "chilled" his right to an open trial:

> This type of questioning and argument has the potential to result in an improper partial closure of the courtroom by "chilling" the attendance of spectators who fear being singled out. *See, e.g., United States v. DeLuca*, 137 F.3d 24, 24, 32, 35 (1st Cir. 1998) (upholding partial closure caused by screening mechanism that required spectators to provide written identification before allowed into courtroom); *People v. Jones*, 96 N.Y.2d 213, 750 N.E.2d 524, 525-26, 530, 726 N.Y.S.2d 608 (2001) (upholding partial closure caused by screening mechanism where court officer posted outside courtroom during undercover officer's testimony). But nothing in the record before us indicates that any person who wished to attend the trial failed to do so because of the State's actions. *See, e.g., Hernandez v. State*, 914 S.W.2d 218, 221-22 (Tex. Crim. App. 1996) (no sixth amendment violation where sheriff's department randomly photographed spectators before they were allowed into courtroom; only one witness testified that she stayed away because of screening mechanism and the presence of at least 31 spectators suggested public attendance not chilled). Thus, there is no evidence that Daugherty received anything but a public trial.

(<u>Id</u>. at 5-6).

Petitioner has failed to show how the trial court's exclusion of his family members during his wife's testimony violated his right to a public trial. The trial court was within its right to exclude the witnesses under Rule 615 as potential rebuttal witnesses during Laura Daugherty's testimony to prevent them from hearing her testimony. The closure was narrowly tailored to meet the interests of Rule 615 as the exclusion of specific witnesses was temporary, during Laura Daugherty's testimony only, and the witnesses were allowed to reenter the courtroom immediately thereafter. After another lengthy hearing, during which counsel argued and the child victim testified, the trial judge denied the prosecution's request to exclude the witnesses during the daughter's testimony. The trial court merely ordered them to sit in the back row of the courtroom. Thus, there is no evidence that the petitioner was denied a public trial.

Accordingly, the Washington Court of Appeals affirmation of the trial court's decision was not contrary to or an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

REPORT AND RECOMMENDATION- 10

## VI.  CONCLUSION

Based on the foregoing discussion, the Court should **DISMISS** the petition **WITH PREJUDICE.**  A proposed order accompanies this report and recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **August 18, 2006** as noted in the caption.

DATED this 20th, July, 2006.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION- 11